**In re A. Edward McCLURE, Debtor(s).**

**Bankruptcy No. 85–40096.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Gary/Lafayette.

Jan. 5, 1987.

Randy Wolfson, Lafayette, Ind., for debtor.

Richard Browne, Valparaiso, Ind., for plaintiff.

**MEMORANDUM OPINION AND ORDER**

KENT LINDQUIST, Chief Judge.

## I

### Statement of Proceedings

This matter comes before the Court on a Motion to Dismiss this case filed by Lafayette Bank & Trust on August 5, 1986.

## II

### Findings of Fact

The facts necessary to determine the matter are as follows:

1. On June 26, 1986, Midwestern United Life Insurance Company (hereinafter: "MULIC") filed a Motion for Dismissal or Conversion.

2. On August 5, 1986, Lafayette Bank & Trust Company (hereinafter: "LBT") filed its Motion of Lafayette Bank & Trust Company to Convert to Case Under Chapter 7 or to Dismiss Case, and For Accounting.

3. On August 11, 1986, the Court issued notice to all creditors of LBT's motion to convert or dismiss the present case.

4. On August 25, 1986, the Debtor filed his Response of Debtor to Motion for Dismissal or Conversion filed by MULIC.

5. On the same day, the Debtor filed his Response to Motion of LBT to Convert Case under Chapter 7 or to Dismiss Case, and For Accounting.

6. On September 2, 1986, the unsecured creditors' committee filed objections to the motions to dismiss or convert filed by LBT and MULIC.

7. On September 8, 1986, MULIC withdrew its motion to dismiss or convert and joined in the motion of LBT to convert the present case to a case under chapter 7, or to dismiss and for accounting.

8. That all creditors have been served and no other objections had been filed by any other creditor pursuant to the Court's notice to dismiss entered on August 11, 1986.

9. That on December 5, 1986, the Debtor, official unsecured creditors' committee and Simpson Engineering Corporation filed the following motion: Motion of Debtor Unofficial Unsecured Creditors' Committee and Simpson Engineering Corporation to Withdraw Objection to Motion of Lafayette Bank and Trust Company to Dismiss Case and to Join In

said Motion to Dismiss along with Debtor's Consent to such Dismissal.

## III

### Conclusions of Law and Discussion

The initial issue before the Court is not whether the Court may dismiss this chapter 11 case pursuant to 11 U.S.C. § 1112 as the Debtor and the unsecured creditors' committee have withdrawn their objection to the dismissal and joined in the motion. The remaining issue is whether the dismissal should be with prejudice pursuant to 11 U.S.C. § 349. All the parties either have consented to the Motion to Dismiss or have failed to timely object to the notice of Motion to Dismiss. Therefore, this Court may dispose of this matter without further notice.

The issue above stated is controlled by 11 U.S.C. § 349(a) which states:

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f) of this title.

Our review has yielded three cases which have dismissed bankruptcies with prejudice. *In re Petro*, 18 B.R. 566 (Bankr.E.D. Pa.1982), discusses the question of dismissals with prejudices at length. The facts of that case were that on April 15, 1980, the debtors filed a chapter 13 bankruptcy. On December 22, 1980, a hearing was held on trustee's motion to dismiss for failure to make payments. At that time the court denied the motion to dismiss based upon the promise of the debtors that they would commence making payments and that they would appear for first meeting of creditors. On January 14, 1981, the meeting of creditors was held. However, payments were not being made and a proper plan had not been submitted. On March 2, 1981, the trustee filed a second motion to dismiss.

On April 15, 1981, a hearing was held at which time the court ordered the dismissal of the chapter 13 bankruptcy with prejudice. Subsequent to the dismissal, a mortgage holder began foreclosure proceedings and arranged a sheriff's sale of the debtors' principal residence. The sale was to occur on September 23, 1981. On September 18, 1981, the debtors filed a second chapter 13 petition. The mortgage holder brought an action to dismiss the case and to hold the debtors in contempt of court for their violation of the dismissal with prejudice. The debtors countered with a motion to modify the order of dismissal with prejudice. After a hearing, the bankruptcy court dismissed the second case with prejudice and refused to reconsider their initial order. The Court stated in its holding as follows:

The debtors' final argument is that there was insufficient "cause" to dismiss their case with prejudice as is required by § 1307(c) and § 349(a) of the Code. Section 1307(c) provides for dismissal of a Chapter 13 case for "cause". Section 349(a) provides that a dismissal will be without prejudice unless the Court, for "cause", Orders otherwise, neither § 349(a) nor the legislative history thereof, give the Court any guidance as to what would constitute sufficient "cause" for dismissal with prejudice. It appears, however, and, this Court now holds, that there must exist something greater than that which, alone, would constitute "cause" for a dismissal under § 1307(c). Thus, if a debtor merely failed to file a plan timely, there would be insufficient "cause" to Order a dismissal under § 1307(c), but, in the absence of other factors, there would be insufficient "cause" for dismissal with prejudice under § 349(a).

Thus, where there exists a multiplicity of factors which would be sufficient to meet the cause requirement of § 1307, the cummulative effect will be considered in determining whether there exists sufficient cause for a dismissal with prejudice pursuant § 349(a).... In a case, such as this one, where the debtors

demonstrate an absence of that sincerity, time and again, through reckless disregard for the provisions of the Code and the authority of the Bankruptcy Court, it is clear that their case is ripe for dismissal with prejudice. In this case, the debtors continually failed to make payments on their proposed plan; the debtors ignore the directive of the Court to make payments; the debtors failed to appear at a meeting of creditors, and they continually fail to file plans which conform to the requirement of chapter 13. These factors, considered in the aggregate, constitute "cause" for dismissal with prejudice pursuant to § 349(a) of the Code. *Petro*, 18 B.R. at 570. (Footnotes omitted).

*In Re Sando*, 30 B.R. 474 (E.D.Pa.1983), also stands for the proposition that a case may be dismissed with prejudice. In that case the District Court affirmed the Bankruptcy Court's dismissal with prejudice. The Debtor had obtained a mortgage from a creditor. A default in payments occurred. The creditor sued and obtained judgment. Prior to the creditor taking action to enforce the judgment, the debtor filed a Chapter 13 bankruptcy. Thus the automatic stay prevented any enforcement action by the creditor.

The creditor moved for relief from stay. The parties entered into a stipulation which was approved by the Court on April 30, 1982. The stipulation called for the debtor to make certain payments to the creditor each month. The stipulation also contained a default clause allowing the creditor relief from stay upon default in the payments.

The debtor did default in the stipulated payments. The creditor certified the deficiency to the court and commenced its enforcement of its judgment. The debtor then requested the court stay the creditors actions. The court denied the motion.

The standing chapter 13 trustee then moved to dismiss the case for failure to make the payments called for under the plan. After hearing, the judge granted the trustee's motion to dismiss with prejudice. The debtor then appealed to the district court.

The district court found that the debtor failed to make the plan payments for two months. It also found that the debtor had failed to comply with the stipulation, that the debtor had failed to submit a timely brief to the District Court, and that the debtors originally scheduled debt exceeded the amount allowed by chapter 13. These actions convinced the District Court that the debtor's attempted rectification of the chapter 13 deficiencies may only have been temporary. Therefore the District Court affirmed the bankruptcy court's dismissal with prejudice.

*In re Martin-Trigona*, 35 B.R. 596 (Bankr.S.D.N.Y.1983), also stands for the proposition that a proceeding may be dismissed with prejudice. In that case the debtor had filed a voluntary petition before the Bankruptcy Court in the Southern District of New York. Prior to that filing, the Debtor had filed a chapter 11 petitions in the same court both personally and on behalf of New Haven Radio, Inc. Both cases had been transferred to the bankruptcy court for the District of Connecticut. Both were converted to chapter 7.

On June 17, 1983, the District Court Judge for the District of Connecticut entered an order permanently enjoining Mr. Martin-Trigona from filing any bankruptcies in any court in the United States without leave of the District Court of Connecticut. That order was entered to curb a plethora of litigation brought by the debtor.

Subsequent to the entry of that order, Mr. Martin-Trigona filed another personal bankruptcy before the Southern District of New York. The United States trustee and a creditor brought a motion to dismiss the action with prejudice. The Bankruptcy Court for the Southern District of New York agreed and dismissed the case with prejudice. The Court stated:

Section 349(a) of the Code provides that dismissal of a case is without prejudice unless the court, for cause, orders otherwise. A dismissal with prejudice is a drastic sanction which may affect sub-

stantial rights of the litigates and should only be used in extreme situations. Generally, this remedy is appropriate only where there is a clear record of "delay and contumacious conduct" by the petitioner. Where there exists a multiplicity of factors which would be sufficient to meet the cause requirement of § 1307, the cummulative affect will be considered in determining whether there exists sufficient cause for dismissal with prejudice pursuant to § 349(a).

In the present case, the debtor has not only failed to file a plan or schedules, he has violated the injunction issued by District Judge Cabranes in failing to comply with the prescribed conditions for obtaining leave to file this proceeding.... Its violation constitutes cause for dismissal with prejudice at least as to debts that are dischargeable in the proceeding before the court that issued the injunction.

Further cause for dismissal of this case with prejudice also lies in the debtor's refusal to cooperate in the meeting of creditors mandated by § 341 of the Code. The debtor is required to appear and submit to examination under oath at the § 341 meeting of creditors.

*In re Martin-Trigona,* 35 B.R. 601–02. (Citations omitted, footnotes omitted.)

In addition to the above courts, other courts have enjoined the debtor from refiling for a certain period of time. *See, In re Dyke,* 58 B.R. 714, 718 (Bankr.N.D.Ill.E.D. 1986); *In re Bradley,* 38 B.R. 425 (Bankr. C.D.Calif.1985); and *In re Damien,* 35 B.R. 685, 687 (Bankr.S.D.Fla.1983). Each of those courts relied on § 349(a) or the Court's equitable powers provided by § 105(a) of the Code. In each case, the debtor had used the bankruptcy court for the delay of creditor actions. Each court found this offensive to the bankruptcy court, and dismissed the case. Each order of dismissal contained an injunction which restrained the debtor from refiling for a set period. Generally, each court set the time of the injunction roughly equal to the amount of time it would take the harassed creditor to enforce its rights in collateral.

■ Based on the above cited cases, we find that this Court has the power under § 349(a) to dismiss the present case with prejudice provided that "cause" exists for such an order. We acknowledge that the cases cited above except *In re Dyke,* 58 B.R. 714 (Bankr.N.D.Ill.1986), rely on § 349(a) which was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984. The amended statute has retained the "for cause" wording. Therefore we hold that under § 349(a) a court has the power to dismiss with prejudice, and the cases cited still provide support for our position.

■ The facts in this case provide "cause" for dismissal with prejudice under § 349. We note first that the present case is the second consecutive chapter 11 filing by the Debtor. The first case was filed on April 25, 1983. It was subsequently dismissed. No plan was ever filed or confirmed.

Subsequent to the first filing, the Debtor refiled the present case on March 1, 1985. The Debtor has been unable to propose a confirmable plan to date. The Debtor did file a plan and disclosure statement on June 28, 1985. However, that plan has never been confirmed nor has the disclosure statement been approved. Thus, the Debtor's second filing has been pending for more than twenty-one months without confirmation of the plan for reorganization.

Additionally, the Debtor has shown a consistent inability to comply with orders of this Court regarding the filing of financial reports. On March 20, 1986, this Court entered an Order to Show Cause why the case should not be dismissed for the Debtor's failure to file the financial reports. Those reports were required by order of this Court entered March 11, 1985. On March 27, 1985, the Debtor advised the Court that he would submit a motion and order dismissing the order to show cause. Presumably, this meant that the Debtor would file the financial reports required by this Court. On April 21, 1986, the Debtor asked and was granted an extension of time for the filing of the financial reports

to April 28, 1986. On April 29, 1986, one day after the extended period for filing the financial reports, the Debtor filed financial reports for August, September, October, November, and December of 1985. Additionally, he filed financial reports for January, February, and March of 1986.

Financial statements for April, May, June, and July of 1986 were not filed until August 13, 1986. Again, the financial reports were filed only after threats of dismissal. Thus, the Debtor's behavior throughout this case as reflected by its failure to file financial reports, has been one to disobey this Court's order, complying only upon threat of dismissal.

Further evidence exists of the Debtor's consistent "foot-dragging" regarding compliance with Court orders. This Court's order of November 7, 1986 was entered as a result of a hearing on motions for appointment of trustee, motion to dismiss, and motion to convert and an accounting filed by LBT and joined in by MULIC. In lieu of dismissal or conversion, this Court entered an order that the Debtor provide this court with detailed monthly financial statements and reports for a period from May 1, 1986 through October 31, 1986,[1] which in theory would resolve questions regarding the receipt and use of funds by the debtor-in-possession. Further, the Court required the Debtor to file with the Court copies of all cancelled checks and bank statements for a similar period.

On November 17, 1986, the Debtor requested an extension of time to file the reports. On the same date, the Debtor and the unsecured creditors' committee requested the Court reconsider its opinion which allowed the Debtor fourteen days to file the reports, cancelled checks and bank statements. On November 25, 1986, LBT moved for this Court to cite the Debtor for contempt due to its failure to comply with this Court's order of November 7, 1986. Additionally, on the same date, LBT object-

ed to the extension of time requested by the Debtor.

This Court granted an extension to December 15, 1986. Simultaneously, the Court denied the motion to reconsider. On December 8, 1986, the Debtor partially complied with this Court's order by producing copies of checks from three accounts. The Debtor also requested more time on December 15, 1986, to comply with other portions of the Court's order.

We believe this indicates the Debtor's further reluctance to subject himself to the jurisdiction of this Court. The Debtor merely requests the use of the benefits of bankruptcy without any compliance with burdens.

Evidence of the Debtor's unreasonable delay that is prejudicial to creditors can be found in his actions with LBT regarding relief from stay and adequate protection. On March 13, 1985, LBT moved for adequate protection and/or relief from the stay. On March 14, 1985, this Court entered an order keeping the stay in effect pending the appointment of the present judge. On August 7, 1985, the Debtor and LBT voluntarily entered into an agreed stipulation. That stipulation called for the payments of sums as adequate protection of LBT. Also contained therein was a "drop dead" default provision. Simply stated, that provision called for automatic relief from the stay for LBT without further court order should the Debtor default in any of the provisions of the agreed stipulation.

Subsequently the Debtor did default on the payments to LBT. On May 28, 1986, LBT filed an affidavit of the Debtor's default. Additionally, on June 3, 1986, LBT sought and was granted an order granting relief from the stay. While pursuant to the stipulation the order was unnecessary, LBT sought a "comfort order" to protect itself.

---

1. The Court required the Debtor to provide more detailed monthly reports than those reports which were filed. The filed reports were vague and did not give enough information to satisfy the Court. In its November 7, 1986 Order, the Court specifically set out the information it would require in the reports.

288

Subsequent thereto, on June 13, 1986, the Debtor appealed this Court's "comfort order". The appeal was filed even though the Debtor had voluntarily entered into the stipulation with LBT and had defaulted in the adequate protection payments required by that stipulation. Further, the Debtor had agreed to automatic relief upon default in the stipulation so that the comfort order was unnecessary. Nevertheless, the Debtor appealed the order seeking to deliberately delay LBT's enforcement of its lien rights. While it is not this Court's place to rule on an appeal, it appears frivolous and without any merit whatsoever.

Further evidence of the tactics used by the Debtor in delaying LBT from litigating its alleged lien rights in collateral can be found in the Debtor's two attempts to remove the state foreclosure action instituted by LBT. That action was instituted some time after the bankruptcy was filed but prior to LBT receiving notice of the filing. On July 26, 1985, the Debtor filed its first application for removal of the mortgage foreclosure action. On February 11, 1986, this Court recommended remand of that action due to the untimeliness of the motion for removal. On April 8, 1986, the District Court did in fact remand LBT's state foreclosure action.

On June 23, 1986, the Debtor filed a second application for removal of the state foreclosure action. The second removal was filed after relief was granted LBT to proceed with the state court action due to the Debtor's default in the agreed adequate protection stipulation. The removal effectively stalled the foreclosure action until this Court can review the motions for remand and make recommendations to the District Court. The District Court must then enter a final order. Due to backlog in each court, the process could take months. Thus, the Debtor has once again unreasonably delayed LBT from litigating its alleged rights in the collateral while not paying adequate protection to LBT.

Further evidence of the Debtor's unreasonable delay in dealing with secured creditors can be found in its treatment of MUL-IC. A similar scenario occurred with MULIC. Adequate protection stipulations were entered into. A default occurred due to the failure to pay the required payments. MULIC filed a cross-claim against the Debtor in LBT's state court foreclosure action. The Debtor then filed his second removal of LBT's state foreclosure action.

We feel that the actions of the Debtor clearly indicates the Debtor's use of the provisions of the Bankruptcy Code and specifically chapter 11 to unreasonably delay his creditors to their prejudice. While we do not mean by this opinion to discourage appeals of our orders, or the exercise of due diligence of the debtor's rights, the present case presents a clear abuse of those rights. Again we find that the Debtor has enjoyed the protections of bankruptcy, without complying with any of the duties that that protection requires.

In finding that the Debtor's conduct has caused unreasonable delays the Court finds the statement of the Bankruptcy Court in the case of *In re Bystrek*, 17 B.R. 894, 895 (Bankr.E.D.Pa.1982) to be appropriate. The Court stated:

> The troubling aspect of this case is that debtor's counsel seems to believe that Bankruptcy Court is a legal playground where the debtor can indulge in an elaborate game of catch-me-if-you-can with her creditors. Such is not the case. Although the law grants a generous measure of relief to debtors, this benefit is not gratuitous. The law also imposes a measure of responsibility. As a member of the bar and an officer of the Court, counsel especially should be aware of this fact. The game attempted in this case cannot be permitted.

This Court however, wants to make it very clear to the Debtor, LBT, MULIC and any other Court which may be called upon to construe or apply this order that by dismissing this case with prejudice it is not in any way or manner whatsoever ruling or commenting on the substantive rights, claims, defenses, set-offs; counterclaims, etc. that the respective parties may have arising out of any of the transactions that

may have arisen between them, as the merits of the parties' respective positions arising out of their relationships, contractual or otherwise, were never submitted to or decided by this Court. Accordingly, it is not intended that this order in any way prejudice the parties from asserting any and all substantive rights and defenses they may have in the state court.

As further evidence of the Debtor's use of the bankruptcy system to unreasonably delay creditors, we would note that the present case is only one of several the Debtor has currently pending before this Court. Also before this Court is the matter of Clearview Limited Partnership, cause No. 85–40085. That case was filed on February 26, 1985. No plan has ever been confirmed in that case either. We would note that the Debtor is the sole shareholder of the corporation which is the general partner and the sole limited partner.

Additionally, the Debtor has filed McTol, Inc., cause No. 86–40065 before this Court. The case was filed on January 28, 1986, and no plan of reorganization has been filed or confirmed by this Court to date. In McTol, the Debtor is the sole shareholder and the only officer and director of the corporation.

Lastly, we would note that the Debtor is also involved Auto-Wise Parts and Supply, Inc., cause No. 86–40058. It was filed on August 29, 1986, and no plan has been proposed in that case either.

Therefore, the Debtor has occupied this Court's time with its various corporate and limited partnership alter egos. None of the entities has a confirmed plan on file. We find this another example of unreasonable delay by the use of the Bankruptcy Code and system.

The authorities cited above generally hold that cause is shown for dismissal with prejudice where more than one ground for dismissal exists in any given case. In the present case we find three grounds for dismissal. First is the unreasonable delay by the Debtor to the prejudice of his creditors. This delay is further shown in the Debtor's disregard for this Court's orders

as well as the tactics the Debtor has engaged in attempting to not comply with the Court's order. Secondly, grounds for dismissal exist due to the Debtor's failure to propose a plan which could be confirmed. In fact, although a plan has been proposed, it is apparent that confirmation will not occur.

■ Third, we would find dismissal with prejudice appropriate due to the Debtor's failure to comply with the Court's original general order for the filing of monthly operating statements. The Debtor has also not complied with this Court's order of November 7, 1986, but has requested extensions of time to comply with that order. This in itself constitutes "cause" for dismissal under § 1112(b) as the list of grounds for dismissal are only illustrative and thus not exclusive. Thus, the Court has inherent power to dismiss or convert a case for failure of the debtor to prosecute its case in accordance with the orders and rules of the court. *See, In re Bacon*, 52 B.R. 52, 53 (Bankr.D.N.H.1985); and, *Matter of Odom Enterprises, Inc.*, 22 B.R. 785, 790 (Bankr.E.D.Ark.1982). *See also, In re Baumgartner*, 57 B.R. 513 (Bankr.N. D.Ohio W.D.1986); *Matter of Denrose Diamond*, 49 B.R. 754, 758 (Bankr.S.D.N.Y. 1985); *In re Filipek*, 35 B.R. 339 (Bankr.D. Hawaii 1983), which discuss the duties of the debtor to file operating statements with the court as ordered.

■ The Debtor is a fiduciary of this Court and has a fiduciary obligation to its creditors the same as a trustee. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 1994–95, 85 L.Ed.2d 372 (1985). The disclosure of financial condition by periodic reporting to interested parties is high on the list of the fiduciary obligations of the debtor-in-possession and is to be excused only for justifiable cause. *In re Modern Office Supply, Inc.*, 28 B.R. 943, 945 (Bankr.W.D. Okla.1983). The Debtor's default in providing crucial and critical financial data as required by court order establishes suffi-

cient cause to convert a Chapter 11 case to a Chapter 7 case. *Id.* at 945.

The Court nor the creditors should have to neither coerce or implore the Debtor as a fiduciary into filing timely, accurate and complete monthly operating statements while at the same time the Debtor is asking for the pervasive protection afforded by the Bankruptcy Code.

Therefore, we find that cause exists for the dismissal of this case with prejudice.

IT IS THEREFORE ORDERED that the present case be DISMISSED WITH PREJUDICE.